### RIGHTS OF A WIFE AS TO PLACE OF RESIDENCE.

Common Pleas Court of Fairfield County.

MARY E. IMLER *v.* STANLEY B. IMLER.

Decided, April Term, 1909.

*Husband and Wife—Action by a Wife Against Her Husband for Partition, and Refusal to Follow Him to Another Place of Residence not Ground for Divorce, When.*

1. The refusal of a wife to abandon a reasonable place of residence which has been established by the husband and is suitable for the family and affords advantages to the children for schooling and employment, and to follow him to another locality affording no such advantages is not a ground for divorce.

2. Nor is ground for a divorce afforded by the further fact that the wife has brought an action against the husband for the partition of land as to the management of which they can not agree.

*C. A. Radcliffe,* for plaintiff.
*Snyder & Lindsey,* contra.

REEVES, J.

The court first stated the issues in the pleadings and also the facts as shown in the record of the divorce case in Pickaway county between the same parties and continued.

That is the state of the case as to the record in this proceeding in Pickaway county. As far as the matters raised in the pleadings in Pickaway county were adjudicated, this court can not review that adjudication. That must stand.

The first thing to determine is what was adjudicated at that time. These pleadings were filed in 1906 and the court could only adjudicate the matters set out in the pleadings in July, 1906. The court in Pickaway county could not adjudicate matters that occurred after July, 1906. So that all matters up to that time in regard to the conduct of the parties were adjudicated.

I might remark here that the only reason given by this defendant here for bringing that action of divorce in Pickaway county is that his wife had brought an action of partition against

him. It seems that after some negotiation he gave her to understand that she should not take more provisions from this farm and not to expect any support from him, unless they came back there. Thereupon his wife says that she gave him to understand that she owned one-half interest in those premises. It was testified here by his wife, and he did not deny it, that when they were married he had no property whatever and no money. Some time after they were married she received from home $500 in money and that made the hand payment upon this place. She paid one-half of the purchase money, and the balance was paid by the joint efforts and labors of the family. The defendant is a carpenter and stonemason and has some other qualifications. He was not at home very much. He was busy for a number of years before 1904, and was gone nearly all the time. They had a good deal of stock. While he was gone his wife and children who were at home practically managed the farm. The testimony shows that his wife spaded the garden. It is true some of the neighbors say they did not see her, but the work was done, the stock was attended to and he had not hired anybody to do it. His wife and family must have done it. Having made this hand payment of $500, she had a right to bring suit in partition if she and her husband could not agree as to the management of the farm.

Was that any ground for him to bring this suit for divorce? Not at all. He offered her $500 and afterwards $600, and according to this receipt here there was personal property. I don't know whether the personal property was adjudicated. That was the status of the parties when this suit was brought. The court only adjudicated the matters that had transpired between these parties up to that time. It dismissed his petition. Therefore it must have found the allegations of his petition untrue. It is not true she abandoned him and went to Lancaster without his consent. The court found that against him, or it would not have dismissed his petition, because if she had done that, she would have been guilty of gross neglect of duty, at least. Therefore upon that matter the court found against him and in her favor.

The court found against her and said that he was always ready and willing to receive her. It is testified here that upon

cross-examination there the court asked her why she came to Lancaster, and she stated (although she denies that) that he had selected a place of living for the first twenty-five years and that she wanted to select a place for the balance of their life. It may be that upon that statement the court concluded to dismiss her cross-petition. That disposed of matters up to that time.

Now as to moving up here. It is true that the statute says that the husband is the head of the family; he may choose any reasonable place for a home and the wife must conform thereto. That does not mean that he may choose any place. It must be a reasonable place. Who has got the right to say whether it is a reasonable place? Some judges have gone so far as to hold that the husband can pick any place and say to the family, "You must live there." That is not the law in this court. It must be a reasonable place, looking to the condition, number and ages of the family. I will not hold that he can select any place without regard to whether it is a reasonable place, unless the Supreme Court or the circuit court will make that holding.

It is not necessary for the court here to say whether that place where they lived when the children were young and the wife was vigorous would be a reasonable place now, because I find by the clear weight of the testimony that he did change his domicile. His wife testifies to it; his children testify to it. He understood perfectly according to their testimony that when his wife and her mother came up here, that they came up here for the purpose of renting a house. He admits that in 1904 he had bought lumber to build a house in Lancaster, and that the matter had been agreed upon. He says that he changed his mind in 1905. But the testimony shows clearly that he came up here with the first load. With his positive way of thinking and acting there was no one compelling him to come. Therefore I find as a matter of fact that he himself changed his residence in November or December, 1905, to Lancaster for his wife and family, and I believe it to be true as testified by his wife and children that the understanding was that as soon as he got matters in shape and fed some stock through the winter and finished some work there, that he had agreed to come up to

Lancaster himself.  I find that to be the contract by the clear weight of the testimony and his own actions and declarations. Therefore I find that he fixed his domicile up here.

Now had he a right to change his mind?  He had agreed to relieve his family of the burden of taking care of that farm. He had agreed to come to a place where the children could go to school; and I may say to a place where they had access to one of the best regulated and best conducted schools in the state of Ohio.  Some of these children were at this time attending school.  His children had an opportunity to get employment here in a number of factories.  I am satisfied that the plaintiff and defendant both understood, and it was one of the reasons for agreeing to come up here was, that the children could get employment in this city.

When they moved up here he claims that he immediately attempted to get them back.  The reasons that he gave were that he had two verandas to put up down there, and had other work down at Stringtown.  I find that he fixed the domicile of the family here, exercising the right given him by the statute. Some of the children were going to school.  It was not reasonable for him under the statute to pull them back again to Stringtown at that time.  There are good people in Stringtown who live happily there, because it suits them to live there.  Under the circumstances it was not reasonable for him to say, ''I will not come up here and live with you, because I prefer to live at Stringtown where I can take my horse and buggy and go out and do odd jobs and leave you folks at home to look after the hogs and cattle on the farm.''  Therefore I say his wife was perfectly justified after he had come up here and established this home to remain here, and he was bound either to come up here and live with them or support them, and the moment he refused to do that he was guilty of gross neglect of duty.

His wife admits that she agreed that he was to stay down there until he got this work done, fed this stock and got things in shape, and then he was to come up here and live with the family.  He denies that.  She has the preponderance of testimony again.  His actions are against him.  I am satisfied that the claim of the plaintiff is right in that particular.  Now it

is said that she went down there and lived with him and co-habited with him. I have paid pretty close attention to that testimony. I am satisfied that she was trusting in his intention to come back here. She went down there and helped him to butcher twice, time and again washed his clothes and baked bread for him. Whenever he came after her according to his own statement, all that was necessary was for him to say that he wanted her to go down and cook and wash for him and she would go. As soon as that was done she returned to Lancaster. Does that show an intention upon her part to go down there and live there? The burden of proof is upon him to show that. Having established his residence here, she being here, some of the family going to school here, some employed in the factories, some of age. I do not believe his statement when he says that she agreed to go back there and live there and stay there and abandon her family here. I believe it was just as she says, that the agreement and understanding was that he was coming up here to live, and she relied upon that, and she went down there for the purpose of keeping him in good humor and getting him to fullfill that contract. It is true that the testimony shows that he did things that raised suspicion in her mind that he was not going to come up here, but he told her that as soon as he got certain work done that he would come up here. I believe that when she went down there and worked for him it was in view of the agreement that he was to come up here. It was a fraud to induce her to do certain things under a false and fraudulent representation. I am satisfied from his conduct and actions that he never intended to carry out his agreement.

Taking his conduct and actions all around, it shows that the allegations of this petition are true. Just as soon as he found that his wife was going to demand her rights in that property, he offered her $500 for her interest in the property. When she brought that suit for partition which she had a right to do, what is the result? Immediately after she brought that suit he goes off and brings an action for divorce and alimony, and he alleges that he has those children there and asked for alimony out of her share in the land. That shows positively that he never intended to come up here and live with her and that he wanted

to compel her to go down to Stringtown and live with him.    He disposes of the personal property and he gets from his wife what he says was worth $1,800 for $800.    The children were up here and the court had said that he was not to have the custody of the children and not to have any alimony.    She had those children that were under age.    The statute says that he must support his wife and minor children.    If he is unable to do so, his wife must assist him if she is able.    He was making two dollars per day and he says that the reason he did not come up here was that he was getting work down there.    Yet he did not contribute a cent to the support of his wife and minor children. When he is arrested in Pickaway county for failure to support those minor children, he dodges behind a decision of the Supreme Court which was the law at that time, which said that he could not be compelled to support his minor children because he lived in Pickaway county and his children lived in this county.    If he does not support his children now he can be prosecuted in this county and may be sent to the workhouse or penitentiary. Since this court in Pickaway county refused to give him the custody of the children (I have no reason in any manner to reflect upon that court) up to this time he has not done any thing to support those children.

I find that the allegations of this cross-petition are not true and it will be dismissed.    I find that he has been guilty of gross neglect of duty ever since October, 1907, and he is also guilty of willful absence from her for three years, and therefore she is granted a divorce as prayed for.    She is granted the custody of those two minor children until the further order of the court, and the defendant is required to pay her ten dollars a month commencing on the 1st of April, 1909, and continue that payment until the further order of the court for the support of those two minor children.

The costs are taxed against the defendant.